UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-81181-CIV-ALTMAN/Brannon

**EDWARD M. MOORE**,

    *Plaintiff*,

v.

**M/V SUNNY USA** *a/k/a* **EMPIRE DISCOVERY**,
a 73-foot motor yacht USCG No 1042503, HIN
No: ISNMUL06B994 her engines, tackle, boats,
gear, appurtenances etc., *in rem*,

    *Defendant*.

_____/

## OMNIBUS ORDER

**THIS MATTER** comes before the Court on (1) the Plaintiff-Moore's Motion for Summary Judgment ("MSJ") [ECF No. 106], and (2) Moore's Motion to Strike the Claimant-Dong's Second Response to the MSJ (along with Dong's separately-filed Notice/Appendix) [ECF No. 112].[1] In ruling on these two motions, the Court must also address Dong's Objections to United States Magistrate Judge Dave Lee Brannon's Report and Recommendation ("R&R") with respect to two unrelated, but outstanding, motions [ECF No. 104].[2]

The Honorable Beth Bloom transferred this case to the Undersigned on April 11, 2019—

---

[1] The Claimant's full name is Jian Yun-Dong a/k/a John Dong.

[2] In his R&R, Magistrate Judge Brannon ruled on two non-dispositive motions. The first was Dong's Motion for Implementing Mailbox Rule [ECF No. 88], in which Dong—who is incarcerated—asked the Court to toll the deadline for him to respond to any motion or court order until the day on which he physically receives the document. *See* [ECF No. 88 at 3]. The second was Moore's Motion to Strike or in the Alternative Reply to Defendant's Response in Opposition to Plaintiff's Request to Confirm Sale of Vessel [ECF No. 94]. In this second motion, Moore argued that, given the strictures of Local Admiralty Rule E(17)(f), Dong had improperly filed a response to a ministerial motion to confirm the vessel's sale. *See generally id.* The Magistrate Judge decided both motions in Moore's favor, and Dong filed timely objections to the R&R.

three weeks *after* the U.S. Marshal's Service sold the vessel at issue here [ECF No. 90].

## THE FACTS

Moore brought this *in rem* action against the M/V Sunny USA a/k/a "Empire Discovery" (hereinafter, "vessel"). *See* Complaint [ECF No. 1]. Moore's Complaint seeks to enforce a maritime lien against the vessel on the ground that Dong failed to pay for the vessel's dockage and maintenance—as well as environmental and property damage that proximately resulted from Dong's negligent supervision of the vessel. *See generally id.*

The case proceeded as follows: On August 31, 2018, Moore filed his two-count Complaint against the vessel and moved the Court for a warrant to arrest it. *See* [ECF Nos. 1 & 3]. The Complaint includes one count for "Foreclosure of Maritime Lien/Breach of Contract" and another for the Defendant's allegedly negligent failure, before Hurricane Irma, to secure and moor the vessel properly. *See generally* Complaint. Moore's Complaint specifically alleges that, in 2013, the parties entered into a dockage lease contract. *Id.* ¶¶ 9–10 But, the Complaint continues, by no later than September of 2018, Dong both stopped paying for the vessel's dockage fees and generally neglected the vessel's maintenance—as a result of which the vessel caused some damage to Moore's dock and the surrounding environment. *Id.* This latter damage, the Complaint says, prompted the United States Coast Guard to intervene and, to Moore's chagrin, to require Moore to "monitor" and maintain the vessel. Compl. *Id.* ¶¶ 13–14. Ultimately, the Complaint avers, Dong's failure to pay the required dockage fees—together with his corresponding negligence—forced Moore to lose some $20,090.00. *Id.* ¶ 17.[3]

On September 5, 2018, the Court issued a warrant and appointed Starboard Yacht Group

---

[3] This amount includes $15,800 Moore lost in unpaid dockage fees and $4,290 Moore paid for "pollution monitoring and water removal service." Compl. ¶¶ 13–17.

LLC as the vessel's substitute custodian [ECF Nos. 6 & 12]. On October 12, 2018, pursuant to the Court's instructions, a United States Marshal arrested the vessel [ECF No. 15].

On October 15, 2018, Moore filed a Notice of Action and Arrest of Vessel, by which he provided notice of the vessel's arrest to a service list that included both of Dong's last known addresses [ECF No. 13]. On October 18, 2018, Moore filed a Second Notice of Action and Arrest of Vessel, which also included addresses for the vessel's last known owner—Empire Discovery, Inc. [ECF No. 14]. Moore published both Notices in the Daily Business Review on October 26, 2018 [ECF No. 17].

On November 2, 2018, Dong, appearing *pro se*, moved to dismiss Moore's Complaint on the ground that it constituted, in his words, an "extortion scheme." *See generally* Motion to Dismiss [ECF No. 18]. While Dong's motion was pending, Moore moved the Court to authorize an interlocutory sale of the vessel. [ECF No. 30]. On February 15, 2019, the Court denied Dong's Motion to Dismiss—concluding that he lacked standing to challenge the sale because he had never filed a "verified statement of right or interest" in the vessel under the time constraints imposed by Supplemental Admiralty Rule C(6)(a)(i)(A). [ECF No. 41 at 3–4].[4]

On February 21, 2019, just days after denying Dong's Motion to Dismiss, the Court granted, in part, Moore's Motion for Interlocutory Sale, *see* [ECF No. 42], and directed the United

---

[4] This Rule requires that "a person who asserts a right of possession or any ownership interest in the property that is the subject of the action must file a verified statement of right or interest [] within 14 days after the execution of process." FED. R. CIV. P. SUPP. R. C(6)(a)(i)(A). The party asserting any such right or interest must then serve an answer within 21 days after filing its "statement of right or interest." *See* FED. R. CIV. P. SUPP. R. C(6)(a)(iv). Dong did not file a "verified statement of right or interest" within this timeframe—nor did he move for an extension of time within which to do so. Because "[c]ompliance with Supplemental Rule C(6) is obligatory in order for a party to have standing to challenge an *in rem* claim," *see Dresdner Bank AG v. M/V OLYMPIA VOYAGER*, 463 F.3d 1233, 1237 (11th Cir. 2006), the Court denied Dong's Motion to Dismiss.

3

States Marshal, by March 22, 2019, to sell the vessel at a public auction to the highest bidder.[5] *See id.* The Palm Beach Daily Business Review published notice of the public auction on both March 7, 2019 and March 14, 2019 [ECF No. 94–1 at 2].

On March 7, 2019, prior to the sale, Dong filed a supplemental statement of interest [ECF No. 53]—which he followed with (1) a motion to stay the interlocutory sale of the vessel and (2) a motion for release of the vessel upon the setting of a bond. *See generally* [ECF Nos. 58 & 59].

On March 14, 2019, in an Omnibus Order ("Omnibus Order") [ECF No. 73], Judge Bloom addressed several outstanding motions, including Dong's Motion to Reconsider the denial of his Motion to Dismiss [ECF No. 68]. To prevent the "manifest injustice" that might result from Dong's failure to comply with Supplemental Admiralty Rule C(6)(a)(i)(A), Judge Bloom revisited Dong's Motion to Dismiss and, this time, construed it as a timely verified statement of interest—a construction that now afforded Dong the necessary standing to challenge the sale. *See* [ECF No. 73 at 5]. The Omnibus Order thus: (1) reinstated, but again denied, Dong's Motion to Dismiss; (2) granted Dong's motion to set bond for the release of the vessel and ordered Dong to deposit $60,000, as security for the vessel, in the Court's Registry *by March 22, 2019*; and (3) denied Dong's motion to stay the interlocutory sale—advising all parties that, "[u]pon the posting of the bond and verification filed with this Court by March 22, 2019, the United States Marshal will be directed to CANCEL the sale of the Vessel that the Court previously ordered, ECF No. [42]." *Id.*

---

[5] A court may order the sale of a vessel if the vessel is "(A) perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action; (B) the expense of keeping the property is excessive or disproportionate; or (C) there is an unreasonable delay in securing release of the property." FED. R. CIV. P. SUPP. R. E(9). Before ordering the sale of a vessel under this rule, the Court must conclude that *at least* one of these three conditions has been satisfied. *See 20th Cent. Fox Film Corp. v. M.V. Ship Agencies*, 992 F. Supp. 1434, 1437 (M.D. Fla. 1997) (citing *Silver Star Enterprises, Inc. v. M/V Saramacca*, 19 F.3d 1008, 1014 (5th Cir. 1994). In ordering the sale of the vessel in this case, Judge Bloom comprehensively described the evidence in support of each of these three conditions. [ECF No. 42 at 2–3].

4

at 5-10. In other words, although Judge Bloom's Omnibus Order required that, *if Dong managed to post the requisite bond by March 22, 2019*, the sale should be cancelled, it did not otherwise set aside her prior order, in which she had unambiguously directed the "United States Marshal" to "sell, to the highest bidder at public auction[,] the M/V Sunny USA, her engines, tackle, boats, appurtenances etc., on or before March 22, 2019." *See* February 21, 2019 Interlocutory Sale Order [ECF No. 42 at 4]. Indeed, the Omnibus Order specifically *denied* Dong's request to stay the vessel's sale.[6]

The March 22nd deadline came and went without Dong posting the required bond. Nor, notably, did Dong move for an extension of time within which to post that bond. As a result, on March 22, 2019, the United States Marshal's Service held a public auction, at which it sold the vessel for $1,000 to "Inshan Drydocking Services, Inc."[7] *See generally* [ECF Nos. 83 & 100]. Inshan then apparently sold the vessel, at the same price, to Moore. *Id*.

On April 1, 2019, Moore filed a Request for Confirmation of Sale by the Clerk of Court, in which he indicated that, pursuant to Local Admiralty Rule E(17)(g)(i),[8] no objections to the sale of the vessel had been filed with the Clerk by the March 29, 2019 deadline [ECF No. 84]. In response, the Clerk entered a Confirmation of Sale the very next day [ECF No. 85].

On April 8, 2019, after neither posting the required bond nor objecting to the sale of the vessel, Dong filed a "Response" in opposition to Moore's already-confirmed Request for

---

[6] As relevant here, Judge Bloom's Omnibus Order concluded as follows: "5. Mr. Dong's Motion to Stay Interlocutory Sale, ECF No. [58] is DENIED."
[7] Inshan purchased the vessel through its representative, Matthew Valcourt, who also serves as Moore's attorney in this case.
[8] Local Admiralty and Maritime Rule E(17)(g)(i) reads, in relevant part, as follows: "Unless otherwise permitted by the Court, an objection must be filed within seven (7) days following the sale. The party or person filing an objection shall serve a copy of the objection upon the Marshal and all other parties to the action, and shall also file and serve a Certificate of Service indicating the date and manner of service."

5

Confirmation of Sale [ECF No. 86].[9] In that "Response," Dong erroneously contended that Judge Bloom's March 14, 2019 Omnibus Order had "canceled" the sale of the vessel—this, despite the fact that Dong did not timely post the requisite $60,000 bond.

On April 18, 2019, nearly four weeks after the March 22nd sale, the Clerk of Court received from Dong a $60,000 check as bond for the vessel's release [ECF No. 93]. The letter accompanying the check is bizarrely dated "April,2 2019 [sic]"—which, in either event, is eleven days past the Court's deadline for Dong to post a bond and two days past Dong's deadline to object to the sale. *See* Omnibus Order [ECF No. 73].

Having finally obtained the vessel, Moore now moves for summary judgment on his interest in the after-cost proceeds from the sale of the *res*, which he estimates at $600. [ECF No. 106 ¶ 12]. In opposing Moore's Motion for Summary Judgment, Dong filed two responses—the second of which contains an appendix that is referenced in, but is not docketed with, the first. *See* [ECF Nos. 108, 110 & 111]. Moore then timely moved to strike Dong's Second Response to the MSJ [ECF No. 112].

## THE LAW

Before the Court, then, are (1) Dong's Objections to the Magistrate Judge's R&R [ECF No. 104]; (2) Moore's Motion for Summary Judgment [ECF No. 106]; and (3) Moore's Motion to Strike Dong's Second Response to the MSJ (and the separately-filed Notice/Appendix) [ECF No. 112]. In adjudicating these three motions, the Court must apply the following standards of review.

Dong objects to the R&R's findings and recommendations. The two motions the Court referred to Magistrate Judge Brannon—Dong's Motion to Implement Mailbox Rule [ECF No. 88] and Moore's Motion to Strike [ECF No. 94]—are non-dispositive insofar as neither motion could

---

[9] Moore moved to strike Dong's "Response" on April 22, 2019 [ECF No. 94].

properly dispose of any of the claims in the case. As such, Magistrate Judge Brannon was authorized to enter an order deciding both motions—subject only to the requirement that the Court "consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law." *See* FED. R. CIV. P. RULE 72(A).[10] And "[c]lear error is a highly deferential standard of review." *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350 (11th Cir. 2005).

The legal framework that applies to Moore's Motion for Summary Judgment is well-settled. Put simply, summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56(a). In determining whether to grant summary judgment, the Court must consider "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* at 248. A dispute about a material fact is "genuine" if the evidence could lead a reasonable factfinder to rule for the non-moving party. *Id.*

---

[10] The "clearly erroneous" standard stands in stark contrast to the requirement—not applicable here—that the Court review objections to *dispositive* motions *de novo*. *See generally* 28 U.S.C. § 636(b)(1).

At summary judgment, the moving party has the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party. *See, e.g., Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to come forward with evidence that a genuine issue of material fact precludes summary judgment. *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); FED. R. CIV. P. 56(e).

"If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992). Notably, assessments of credibility—no less than the weighing of evidence—are fact questions not susceptible of disposition at summary judgment. *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012). The Court must analyze the record as a whole—and not just the evidence the parties have singled out for consideration. *See Clinkscales v. Chevron U.S.A., Inc.*, 831 F.2d 1565, 1570 (11th Cir. 1987). If there are any genuine issues of material fact, the Court must deny summary judgment and proceed to trial. *Whelan v. Royal Caribbean Cruises Ltd.*, No. 1:12-CV-22481, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (citing *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981)).

## ANALYSIS

### I. Magistrate Judge Brannon's R&R [ECF No. 101]

On May 28, 2019, Magistrate Judge Brannon issued an R&R [ECF No. 101], in which he recommended that: (1) Dong's Motion for Implementing Mailbox Rule [ECF No. 88] should be denied as moot; (2) Moore's Motion to Strike [ECF No. 94] should be granted; and (3) the Clerk of Court should return Dong's $60,000 bond payment. *See generally* R&R. Dong timely objected to the R&R [ECF No. 104]. Because both motions are, by their nature, non-dispositive, the Court

8

reviews the R&R only for clear error. *See Quorum Health Res., LLC v. Hosp. Auth. of Wayne Cnty., Georgia*, No. CV 208-042, 2011 WL 13202018, at *2 (S.D. Ga. Mar. 4, 2011) ("A motion to strike . . . is a nondispositive motion that falls within Rule 72's 'clearly erroneous or contrary to law' standard.").

### A. Dong's Motion for Implementing Mailbox Rule [ECF No. 88]

Dong asks the Court to "implement the mailbox rule," which, according to Dong, would (1) afford him extra time to receive, and respond to, court documents, and (2) establish that he was given an insufficient amount of time to stop the interlocutory sale. [ECF No. 104 at 5-8].[11] The R&R's conclusion that Dong's Mailbox Rule motion should be denied was, for three reasons, neither clearly erroneous nor contrary to law.

*First*, Dong's suggestion that the Court's unwillingness to take up his Mailbox Rule request prevented him from timely responding to the notice of interlocutory sale is flatly belied by the record. Dong, after all, did file a motion to stay the vessel's interlocutory sale on March 8, 2019 [ECF No. 55]—a motion that, in her Omnibus Order, Judge Bloom addressed and promptly denied. [ECF No. 73].

*Second*, as Magistrate Judge Brannon pointed out in the R&R, *pro se* litigants—like all litigants—must abide by the Federal Rules of Civil Procedure and the Local Rules of the Southern District of Florida. And these rules require, among other things, that *pro se* litigants comply with certain time constraints. *See* R&R at 3 (citing *Jarzynka v. St. Thomas University School of Law*, 310 F.Supp.2d 1256, 1264 (S.D. Fla. 2004) (noting that, "although *pro se* litigants are entitled to have their pleadings liberally construed, such liberal construction does not extend to a *pro se* litigant's failure to comply with either federal procedural rules or local court rules.")).

---

[11] Judge Bloom ordered the vessel's sale on February 21, 2019 [ECF No. 42].

*Third*, as Magistrate Judge Brannon explained, Local Rule 11.1(g) requires that "any party appearing *pro se* shall maintain current contact information with the Clerk of Court . . . [and] [t]he failure to comply shall not constitute grounds for relief from deadlines imposed by Rule or by the Court." S.D. Fla. L.R. 11.1(g). R&R at 3-4. For reasons that remain unclear, Dong listed as his current address with the Clerk of Court, not the federal penitentiary where he currently resides, but a residential property in Charleston, South Carolina. While this discrepancy may account for some of the delay Dong has experienced in receiving court documents, it does not excuse Dong's continuing obligation to make timely filings and to adhere to court-imposed deadlines. Specifically, it does not excuse his untimely posting of a $60,000 bond on April 18, 2019—more than a month after Judge Bloom's Omnibus Order was entered and nearly *four weeks* after the relevant court-imposed deadline had expired.

Because, in short, the Court can find no clear error in Magistrate Judge Brannon's recommendation with respect to Dong's Motion for Implementing Mailbox Rule [ECF No. 88], the Court **ADOPTS** that recommendation and hereby **DENIES** that motion.

### B. Moore's Motion to Strike Defendant's Response to Plaintiff's Request to Confirm Sale or in the Alternative a Reply [ECF No. 94]

On April 8, 2019, Dong filed a two-page "Response" in opposition to Moore's April 1, 2019 Motion to Confirm Sale of Vessel [ECF No. 86].[12] In his "Response," Dong claimed that the Court's Omnibus Order "canceled" the March 22, 2019 interlocutory sale and contended that Moore and his attorney were engaged in an "extortion scheme to obtain the vessel." *See* [ECF No. 86 at 1–2]. Moore moved to strike Dong's "Response." In that motion, Moore argued that, because

---

[12] Local Maritime and Admiralty Rule E(17)(f) provides, in relevant part, that a "plaintiff shall proceed to have the sale [of the vessel] confirmed on the day following the last day for filing objections." In this case, the last day for filing objections was March 29, 2019.

10

Dong had failed to object to the sale under Local Maritime and Admiralty Rule E(17)(g), he was now—several weeks after the sale—precluded from filing objections. In finding for Moore, Magistrate Judge Brannon explained as follows:

> The record does not indicate a sham sale of the Vessel occurred on March 22, 2019. Indeed, the Court never canceled the March 22, 2019 interlocutory sale. The Court gave [Dong] an opportunity to deposit $60,000 by March 22, 2019 in the Registry of the Court, as security for release of the Vessel. However, that bond payment was received after the court-ordered deadline and even after the time allowed to file any objections to the sale of the Vessel. [Moore] timely filed a Request for Confirmation of Sale pursuant to Local Admiralty Rule E(17)(f), and the Clerk of Court thereafter entered a Confirmation of Sale . . . [t]he undersigned respectfully recommends that [Moore]'s Motion to Strike [Dong]'s Response to [Moore]'s Request to Confirm Sale or in the Alternative a Reply [DE 94] be GRANTED, [Dong]'s request to invalidate the interlocutory sale be DENIED, and that the Clerk of Court return [Dong]'s $60,000 bond payment.

The Court agrees with Magistrate Judge Brannon's incisive account of the issue. Judge Bloom's Omnibus Order did not *cancel* the vessel's sale. Instead, Judge Bloom (though she did not have to) afforded Dong an extra *opportunity* to cancel the sale—but *only if* he timely posted the required bond. Indeed, Judge Bloom's Omnibus Order explicitly *denied* Dong's motion to stay the vessel's sale. And, it goes without saying, nothing in the Omnibus Order set aside or otherwise vacated her prior order [ECF No. 42]—in which she had unambiguously granted Moore's Motion for Interlocutory Sale [ECF No. 30]. Dong, of course, both failed to timely post the required bond and then failed to timely object to the sale under Local Maritime and Admiralty Rule E(17)(g). He cannot, in sum, now be heard to complain that, given his tardiness, the Marshals—diligent as they seem to be—performed their duties under Judge Bloom's original order and, without objection, sold the vessel at auction.

In his Objections to the R&R [ECF No. 104], Dong makes several new arguments that he did not include in his original "Response"—the merits of which, as a result, Magistrate Judge Brannon had no opportunity to review. It is, of course, well-established that a district court need

11

not consider new arguments a party failed to "present to" the magistrate judge—even where, as here, those arguments are disguised as objections to the magistrate's report. *See, e.g.*, *La-Casse v. Inch*, No. 19-CV-21270-RNS, 2019 WL 6769740, at *1 (S.D. Fla. Dec. 12, 2019) (citing *Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009) ("We conclude that the district court has broad discretion in reviewing a magistrate judge's report and recommendation, and therefore, the district court did not abuse its discretion in declining to consider [the] timeliness argument that was not presented to the magistrate judge.")).

Accordingly, the Court **ADOPTS** Magistrate Judge Brannon's recommendation and **GRANTS** Moore's Motion to Strike [ECF No. 94].

## II. Moore's Motion to Strike Dong's Second Response to the MSJ (and associated Notice) [ECF No. 112]

On July 9, 2019, Moore moved to strike (1) Dong's Second Response to the MSJ [ECF No. 110] and (2) Dong's separately-filed Notice to the Court [ECF No. 111], which attaches an appendix. *See* Motion to Strike [ECF No. 112]. In his Motion to Strike, Moore argues that neither Dong's Second Response nor his attached appendix is properly before the Court.

Local Rule 7.1(c) requires that any "memorandum" opposing a motion must be "filed and served" no later than "fourteen (14) days after filing and service of the motion"—and all supporting materials, "including affidavits and declarations, shall be served with the filing." The rule goes on to say that "[n]o further or additional memorandum of law shall be filed without prior leave of Court."

Dong timely filed his initial Response to Moore's MSJ on June 25, 2019. [ECF No. 108]. According to the record, Dong did not attach an appendix to that filing. *See id*. Dong's initial response did, however, cite to an (unattached) appendix. *Id.* at 2–3. And, in his subsequent Notice, Dong explained that "[t]he original Response and Appendix were mailed separately and the

12

Appendix was not entered into the docket." *Id.* at 1. The Notice thus appears to include the very Appendix Dong was referring to in his original MSJ Response.

Dong, it is true, should have sought leave of Court before filing his Second Response. That said, the two responses appear to be identical—and so the Court sees little harm in referring to the second instead of the first. Moreover, because Dong appears to have attempted—albeit without success—to file his Appendix [ECF No. 111] with his original Response, the Court will accept that Appendix in adjudicating the merits of Dong's Response. As such, Moore's Motion to Strike Dong's Second Response to the MSJ and Associated Notice/Appendix [ECF No. 112] is **DENIED**.

### III. Moore's Motion for Summary Judgment [ECF No. 106][13]

Moore is the owner of a private dock at which Dong's vessel was moored for several years. *See* MSJ at 1. In 2013, the parties entered into a lease agreement whereby Moore leased his dock to the vessel—owned by Dong—at a monthly rate of $900 for "approximately five years." *Id*. At some point in early 2018, Moore notified Dong that he intended to increase the rent to $1,500 per month. *Id.* And, sometime later that year, Dong refused to pay that increased rent. MSJ at 2. On these facts—at least—the parties appear to agree. But they quibble over nearly everything else—including the all-important question of the Court's jurisdiction to hear the case.

Moore's position is straightforward. The vessel—the very *res* and subject of this case—has been sold at public auction, where it netted an estimated after-cost value of $600. MSJ at 2–3. This total, Moore says, is far less than the value of Moore's maritime lien against the vessel—a lien that arose from unpaid dockage fees. *Id.* at 4–6. To satisfy this lien, Moore argues, he should receive the full amount of the vessel's after-cost value. *Id*. And, he adds, because the case presents

---

[13] Dong's Response ("MSJ Response") is docketed at ECF No. 108. Moore's Reply ("MSJ Reply" appears at ECF No. 109.

no genuine disputes of material fact, this Court should enter summary judgment in his favor—effectively awarding him those $600.[14] *See generally* MSJ.

Dong's MSJ Response—though scattershot in its composition—essentially raises two arguments: *first*, he says that the Court lacks subject-matter jurisdiction to hear the case because the parties' lease agreement does not constitute a valid maritime contract; *second*, he contends that Moore and his attorney have embarked on a fraud-riddled conspiracy to sabotage him and steal his vessel. *See generally* MSJ Response. Dong thus asks the Court to "nullify all proceedings" and to dismiss the case in its entirety. *Id.* at 11.

Dong has taken no discovery, and—besides a few e-mails he sent to Moore, which he appended without Moore's responses—he has he introduced no evidence. *See generally* Notice and Appendix [ECF No. 118]. In short, even were the Court to construe Dong's MSJ Response liberally—to pretend, in other words, that it complies with the strictures of FED. R. CIV. P. 56—the fact remains that none of his averments are supported "by specific references to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the Court." *See* Local Rule 56.1(a)(2).

**A. The Maritime Lien and the Court's *in rem* Jurisdiction**

Dong does not disagree that he and Moore signed a valid contract in 2013—or that, at some point in 2018, he stopped paying under its terms. Instead, Dong argues that Moore's maritime lien is defective—and, as a result, that this Court lacks jurisdiction—because Moore is not licensed or otherwise able to provide maritime necessaries, because Moore never provided any such maritime necessaries, and because Dong never ordered Moore to provide those necessaries. *See generally* MSJ Response.

---

[14] Moore did not file any *in personam* claims against Dong.

"[T]o obtain a maritime lien, a person must: (1) provide necessaries; (2) to a vessel;[15] (3) on the order of the owner or agent." *Galehead, Inc. v. M/V Anglia*, 183 F.3d 1242, 1244 (11th Cir. 1999) (interpreting 46 U.S.C. § 31342). Moore has established all three of these conditions here.

"The term 'necessaries' [as it appears in 46 U.S.C. § 31342] includes repairs, supplies, towage and the use of a dry dock or marine railway, and has been interpreted broadly to include any goods and services 'reasonably needed' in a ship's business for a vessel's continued operation." *Barwil ASCA v. M/V SAVA*, 44 F. Supp. 2d 484, 487 (E.D.N.Y. 1999) (citing *Newport News Shipbuilding & Dry Dock Co. v. S.S. Independence*, 872 F. Supp. 262, 265 (E.D.Va. 1994); *P.T. Perusahaan Pelayaran Samudera Trikora Lloyd v. Salzachtal*, 373 F. Supp. 267, 275 (E.D.N.Y. 1974)). As these precedents make plain, "dockage" is—it almost goes without saying—"reasonably needed . . . for a vessel's continued operation." *Cf. Inbesa Am., Inc. v. M/V Anglia*, 134 F.3d 1035, 1037 (11th Cir. 1998) (finding that providing a dockage service is "clearly maritime" in nature, and that, as a result, disputes over dockage necessarily trigger the Court's admiralty jurisdiction). And there can be no question but that, by entering into a lease with Moore—by the very terms of which Moore was obligated to provide the vessel with dockage—Dong (the vessel's owner) ordered Moore to provide that "necessary." *See* Boat Dockage Lease Agreement [ECF No. 1-1] (indicating that Dong authorized Moore to provide the vessel with dockage). There is also no genuine dispute as to whether Dong violated the terms of that lease by refusing to pay Moore the rent he was owed. At a minimum, then, Moore is entitled to a maritime lien equal to the unpaid cost of the vessel's dockage, which now totals some $17,261.29. [ECF No. 106-2 at 2].

---

[15] Dong does not dispute that the M/V Sunny USA is "a vessel" within the meaning of 46 U.S.C. § 31342.

This maritime lien thus disposes of Dong's oft-repeated contention that the Court lacks jurisdiction over this (*in rem*) case because—as he notes—the vessel was never docked in navigable waters. "Federal district courts obtain *in rem* jurisdiction over a vessel when a maritime lien attaches to it." *Crimson Yachts v. Betty Lyn II Motor Yacht*, 603 F.3d 864, 868 (11th Cir. 2010). Dong's reliance upon the vessel's location, therefore, is misplaced. Put another way, the Federal Maritime Lien Act grants maritime liens to individuals on the basis of their relationship to, or service of, a particular vessel—and not, as Dong seems to believe, because of the vagaries of the vessel's location. *See id.* (discussing this aspect of 46 U.S.C. §§ 31341–31343). And where, as here, a person provides a vessel with "necessaries" on "order of" its "owner," a "[maritime] lien gives [that person] a property right in [the] vessel, and the proceeding *in rem* is . . . a means of enforcing th[at] property right." *Id.* (quoting *Merchs. Nat'l Bank v. Dredge Gen. G.L. Gillespie*, 663 F.2d 1338, 1346 (5th Cir. 1981). Because Moore provided the vessel with dockage—a "necessary"—by order of Dong (the vessel's owner), Moore obtained a maritime lien in the vessel, which this Court now has the exclusive authority to enforce.

### B. Moore is Entitled to $600

Moore has presented admissible evidence—his own declaration and some assorted business records—to support his contention that Dong (1) failed to pay him for dockage, and that (2) the amount Dong owes him far exceeds the $600 value of the *res*. [ECF No. 106-1 & 106-2]. Moreover, in his declaration, Moore attests that he incurred more than $61,174.40 in damages, including substantial custodial costs and publication fees.

Dong has introduced no evidence to rebut Moore's declaration. Instead, without any citation to the record, Dong embarks on a conspiratorial tale of sabotage and fraud—at the heart of which lies his claim that Moore insidiously sabotaged his boat, unscrupulously raised the

dockage fees, and then cleverly thwarted Dong's efforts to vacate the dock. And, although he vaguely suggests that there remain in the case some as-yet-unidentified questions of material fact, his ultimate contention appears to be that his refusal to pay Moore for dockage was a justifiable response to Moore's persistent attempts to extort him for money.

But, to create a genuine issue of material fact, "affidavits that . . . oppose summary judgment motions shall be made on personal knowledge, and shall set forth such facts as would be admissible in evidence." *Macuba v. Deboer*, 193 F.3d 1316, 1322–23 (11th Cir. 1999) (cleaned up). And "[t]he general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment." *Id*. at 1322 (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)).

Unfortunately for Dong, he has no personal knowledge about Moore's alleged scheme to defraud him and sabotage his boat. There is, for example, nothing in the record from which the Court might reasonably conclude that Dong *heard* Moore commit any illegal act, or that he *watched* Moore prevent him from vacating the dock, or that he otherwise *witnessed* Moore *do anything* that might discharge his obligations under the lease. In short, even if Dong's conspiracy theories could—speaking hypothetically—discharge his liabilities, he has provided the Court with no admissible evidence in support of those theories and, thus, cannot survive Moore's Motion for Summary Judgment.

Because Dong failed to pay Moore over $17,261.29 in dockage fees, Moore may now recover the after-cost value of the *res*—which he estimates is $600—to satisfy, in part, his maritime lien. The United States Marshal's Office shall, after deducting administrative costs associated with the vessel's arrest and sale, disburse to Moore the net proceeds of that sale.

Accordingly, the Court hereby

**ORDERS AND ADJUDGES** as follows:

1. Magistrate Judge Brannon's R&R [ECF No. 101] is **ADOPTED**. Dong's Objections to the Magistrate's R&R [ECF No. 104] are **OVERRULED**. The Clerk shall immediately return to Dong his $60,000 bond [ECF No. 93].

2. Moore's Motion to Strike [ECF No. 112] Dong's Second Response to Moore's Motion for Summary Judgment and Dong's Notice to Court Clerk/Appendix is **DENIED**.

3. Moore's Motion for Summary Judgment [ECF No. 106] is **GRANTED**. Moore shall recover damages of up to and including the after-cost value of the *res*.

4. All other pending motions are **DENIED as moot**, any scheduled hearings are **CANCELLED**, and any pending deadlines are **TERMINATED**.

5. The Clerk of Court shall **CLOSE** this case.

6. Pursuant to FED. R. CIV. P. 58, the Court will enter an order of final judgment separately.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 26th day of December 2019.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record
John Dong
71 Delahow St.
Charleston, SC 29492
PRO SE